IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GEORGE R. TILLER, M.D.,

                    Plaintiff,


          vs.                                    Case No. 07-1269-JTM


WILLIAM GALE, Commissioner of
Elections; and  MICHAEL CORRIGAN,
Administrative Judge of the Eighteenth
Judicial District of Sedgwick County, Kansas,

                    Defendants.


MEMORANDUM AND ORDER


     This matter is before the court on the plaintiff Dr. George Tiller's motion for a temporary

restraining order.  Dr. Tiller has brought the present action alleging that a recent petition effort to call

a grand jury to investigate him pursuant to K.S.A. 22-3001 violates his constitutional rights.   Dr.

Tiller brings the action against Sedgwick County, Kansas Commissioner of Elections William Gale

and the Hon. Michael Corrigan, Administrative Judge of the Eighteenth Judicial District, District

Court of Sedgwick County, asking that they be enjoined from, respectively, certifying the petition

or consequently convening the grand jury.   At the September 11, 2007 hearing on Dr. Tiller's

motion, defendant Gale stated that the certification had been completed earlier that day, and the

results sent to Judge Corrigan.

Dr. Tiller brings his claims contending that the convening of the grand jury would violate his rights under 42 U.S.C. 1983, by infringing various federal rights including his "rights to a fair trial and due process of law in violation of the 5th and 14th Amendments," would "constitute malicious prosecution in violation of the Fourth Amendment," and would "constitute a chilling affect (sic) on the right to privacy and the right to an abortion belonging to plaintiff's patients." (Dkt. No. 1 at 8). He contends that federal injunctive relief would be appropriate because previous criminal investigations conducted at the level of the Kansas Attorney General's office have resulted in the filing of only limited, misdemeanor charges, and because a prior grand jury convened in 2006 failed to return any indictment. He contends that the present petition drive has presented no new evidence, and has been brought in bad faith and for harassment.

As noted at the conclusion of the hearing on the plaintiff's motion, the court finds that it should abstain from granting the relief sought. In *Younger v. Harris*, 401 U.S. 37, 46, 27 L.Ed.2d 669, 91 S.Ct. 746 (1971), the Supreme Court articulated a general rule of abstention against federal actions enjoining state criminal prosecutions, based on "the fundamental policy against federal interference with state criminal prosecutions." In *Younger* and the later *Kugler v. Helfant*, 421 U.S. 117, 44 L.Ed.2d 15, 95 S.Ct. 1524 (1975), the Court stressed the importance of the principles of federalism and comity, and indicated that such federal injunctive relief could be granted in only truly exceptional cases. Summarizing *Younger*, the *Kugler* Court wrote:

> This policy of restraint, the Court explained, is founded on the 'basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." [401 U.S.] at 43-44, 27 L.Ed.2d 669, 91 S.Ct. 746. When a federal court is asked to interfere with a pending state prosecution, established doctrines of equity and comity are reinforced by the demands of federalism, which require that federal rights be protected in a

manner that does not unduly interfere with the legitimate functioning of the judicial systems of the States. *Id*. at 44, 27 L.Ed.2d 669, 91 S.Ct. 746. Accordingly, the Court held that in the absence of exceptional circumstances creating a threat of irreparable injury "both great and immediate," a federal court must not intervene by way of either injunction or declaratory judgment in a pending state criminal prosecution.

421 U.S. at 123.

This analysis effectively creates two burdens for a party seeking to enjoin a state criminal action:  first, to show that some form of strong irreparable injury, beyond that typically required for equitable relief; and second, some showing that the state courts are not able to provide protection. The court stressed that a party would have to show irreparable injury beyond the ordinary "cost, anxiety, and inconvenience" of having to defend against a criminal prosecution.  421 U.S. at 124. Relief might be granted, the Court suggested, if there were some evidence of bad faith by state officials:

> the Court in *Younger* left room for federal equitable intervention in a state criminal trial where there is a showing of 'bad faith' or 'harassment' by state officials responsible for the prosecution, *id*., at 54, 91 S.Ct., at 755, where the state law to be applied in the criminal proceeding is "flagrantly and patently violative of express constitutional prohibitions," *id*., at 53, 91 S.Ct., at 755, or where there exist other 'extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment.'

421 U.S. at 124.

Of course, plaintiff, Dr. Tiller, here argues he is being subjected to bad faith harassment, but these allegations have been cited to only as to statements by private citizens or groups of private citizens such as Kansans for Life -- there is no allegation that the two defendants here (the Sedgwick County elections officer and the district court judge) are in any way acting in bad faith.  Nor is there any indication that Dr. Tiller could not obtain relief in the Kansas state courts (either by obtaining another no-true-bill from the grand jury, or even by filing for an injunction in state court).  The

general stress and cost of responding to a state criminal proceeding is not enough to justify

abandoning the general policy of abstention.

> Only if 'extraordinary circumstances' render the state court incapable of fairly and
> fully adjudicating the federal issues before it, can there be any relaxation of the
> deference to be accorded to the state criminal process. The very nature of
> 'extraordinary circumstances,' of course, makes it impossible to anticipate and define
> every situation that might create a sufficient threat of such great, immediate, and
> irreparable injury as to warrant intervention in state criminal proceedings. But
> whatever else is required, such circumstances must be 'extraordinary' in the sense of
> creating an extraordinarily pressing need for immediate federal equitable relief, not
> merely in the sense of presenting a highly unusual factual situation.

421 U.S. at 124-25 (footnote omitted).

In *Kugler*, the Court refused to relax the rule where a state court judge was trying to enjoin

an obstruction of justice prosecution, alleging that the charges were based on coerced testimony, and

that the coercion had been aided by members of the state supreme court.  The *Kugler* Court held that

even if the plaintiff were ultimately convicted, he could appeal the conviction and move for removal

of any of the state supreme court justices who had been involved in the earlier proceeding

compelling his testimony.  Thus, he would not be deprived of a fair hearing of his claims, and the

Court therefore reversed the Court of Appeals' decision which, although it had upheld the dismissal

of the injunctive relief claim, had nevertheless allowed the plaintiff to proceed with a declaratory

judgment action.

The only real support cited by Dr. Tiller for federal action is *Shaw v. Garrison*, 467 F.2d 113

(5th Cir. 1972) in which the Fifth Circuit upheld injunctive relief the district court had awarded to

Clay Shaw, enjoining further state court prosecution by Louisiana District Attorney Jim Garrison.

As noted at the hearing, *Shaw v. Garrison* is of limited utility.  In that case, the district court had

granted the injunction, but stressed the "unique nature of this case," and included specific findings

4

of bad faith and harassment of Shaw by Garrison.  467 F.2d at 114.  As the Court of Appeals noted, the jury in the previous prosecution of Shaw had taken only fifty-five minutes of deliberation after a 42-day trial to acquit the defendant, and that as a result "[w]hatever ambitions [Garrison] may have had as the man who solved the Kennedy assassination crumbled to bits." *Id.* at 115.  Nevertheless, the next business day, Garrison charged Shaw with perjury based on this testimony in the conspiracy trial.

The Court of Appeals recited the various facts cited by the district court for reaching the conclusion that Garrison was acting in bad faith, and held that the findings were not clearly erroneous. *Id.* at 122.  Those facts included:

(a) that the basis for Garrison's investigation of the purported conspiracy, three years after the assassination and in another state from where it occurred, had never explained, nor had the basis for his selection of Shaw as a target;

(b) that the prosecution relied entirely on the (sodium pentothal and hypnosis-assisted) testimony of a witness who had later issued conflicting testimony and who had then refused to testify further on Fifth Amendment grounds;

(c) that Garrison had conducted the earlier trial in an "outrageous and inexcusable" manner in conducting the arrest of Shaw and in his sensationalistic media presentations, 328 F.Supp. at 399;

(d) that Garrison had a financial interest in the prosecution in the sales of an already-published book (and three more under contract) and had further used private funds to conduct his criminal investigation, the funds having been advanced by a group which then demanded results;

5

(e) that there were no witnesses available for the perjury prosecution who were not presented in the conspiracy trial;

(f) that there were no perjury prosecutions of the state witnesses, even though they had clearly contradicted their own prior testimony; and

(g) that indeed no one — including Garrison — could recall any precedent for a perjury prosecution against a defendant *based upon the defendant's direct testimony in a prior trial.*

*Shaw v. Garrison* is the only case cited in any detail in plaintiff's brief, even though, as noted above, the district court in that case had stressed the "unique nature of the case." Further, plaintiff cites only some aspects of the relevant facts in that case, but none is directly translatable to the circumstances of the case here. For example, Dr. Tiller argues that private parties were involved in the prosecution of Shaw, and are doing the same here. But this is inaccurate in a fundamental aspect: the assistance of private individuals and funding cited in *Shaw v. Garrison* was assistance to a state prosecutor while he was conducting a criminal prosecution. Here, the participation of Kansans for Life may result in a grand jury investigation, but no criminal prosecution may be forthcoming. The private activity in *Shaw v. Garrison* was manifestly improper. The private activity here — however harshly or roughly it may have been articulated — is just the sort of citizen activity contemplated by K.S.A. 22-3001(2).

But the discussion of such particular facts should not obscure the larger, decisive differences between *Shaw v. Garrison* and the present case. First, it is not clear that the present grand jury proceeding is conducted in bad faith as that term has been used in *Younger* and succeeding cases. The plaintiff's argument stresses at length that Dr. Tiller was not charged in 2006 by the previous

6

grand jury.  But the failure of a grand jury to return an indictment is not at all like the acquittal obtained by Shaw in the conspiracy trial; double jeopardy has not attached and the failure to return a true bill has no preclusive effect. The 2006 grand jury merely concluded that there was nothing then before it to support a criminal charge.

In *Shaw v. Garrison*, it was clear that there was *no possibility* of any new evidence to support the perjury charge.  Here, there is nothing before the court to establish that a future grand jury would not acquire evidence of criminal activity by Dr. Tiller.  The plaintiff argues that the petitioners have not cited any further evidence to support further charges, but again, it is the very purpose of a grand jury to collect evidence.  And, as Dr. Tiller concedes, he has been charged by Attorney General Morrison with some criminal charges.   Although Dr. Tiller stresses that the charges are 'administrative' and misdemeanors, it remains far from an established fact that no criminal charges could ever be brought against the plaintiff.

Second, the present case would ignore the critical distinction between bad faith by a prosecutor conducting a criminal prosecution (as in *Shaw v. Garrison*), and a group of citizens who have acted in compliance with state law by commencing a grand jury, and who then have no role in that body's deliberations.  No criminal prosecution now exists. Each of the cases such as *Younger* and *Kugler* stresses the importance of finding bad faith or misconduct "by state officials responsible for the prosecution."  *Kugler*, 421 U.S. at 124, *citing Younger*, 401 U.S. at 54.

The plaintiff does suggest in a footnote (Dkt. No. 3 at 7 n. 2) that K.S.A. 22-3001(2) is unconstitutional as a violation of the state constitution's separation of powers doctrine.  Plaintiff provides not a single argument or authority for this proposition other than the bare assertion.  It is not compelling.  First, as noted, plaintiff supplies utterly no authority for it.  Second, the statute does

7

not "invest ... with executive branch powers ... small cadres of aggressive or anarchical citizen groups" as stated by plaintiff. (*Id.*) The sole power provided by K.S.A. 22-3001(2) is the power to *call* the grand jury, the matter subsequently proceeds (if at all) to a criminal prosecution conducted solely by the executive branch. Third, the argument has been implicitly rejected by decisions of the Kansas Supreme Court which have upheld criminal prosecutions arising from petition-summoned grand jury indictments. *See State v. Finical*, 254 Kan. 529, 867 P.2d 322, Kan., January 21, 1994.

Finally, and generally, plaintiff elides the difference between the fact that the grand jury proceeding has been instigated by persons who are not partial (which is true), to the argument that the present grand jury action would be inappropriate because "[t]he absence of an impartial and disinterested prosecutor has been held to violate a criminal defendant's due process rights" (Dkt. No. 3 at 10) (which is also true). But this masks a critical difference: the petitioners may *call* the grand jury, but then they *play no further role in the matter*. The grand jurors are chosen entirely at random. 21 K.S.A. 22-3001(3). The grand jury appoints its own presiding juror. 21 K.S.A. 22-3004. The grand jury may require the sitting prosecuting attorney to attend and provide advice. 21 K.S.A. 22-3007. It may also (with the approval of the district court) employ its own special counsel. 21 K.S.A. 3006(3). There is no evidence that any of these persons — the prospective jurors, the existing district attorney, the potential special counsel, if any — are biased against the plaintiff.

In short, there is nothing to demonstrate that the Kansas courts are "incapable of fairly and fully adjudicating the federal issues" raised by plaintiff. *Kugler*, 421 U.S. at 124. The plaintiff has failed to show the existence of any bad faith or harassment by state officers. When faced with a *Younger* abstention question, the court must determine whether "(1) state judicial proceedings are ongoing; (2) state proceedings implicate an important state interest; and (3) the state proceedings

offer an adequate opportunity to litigate federal constitutional issues." *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir.2003). *See also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Here, while there are no existing ongoing state criminal proceedings, the petition for grand jury is a state judicial proceeding pursuant to K.S.A. 22-3001, the matter clearly touches upon important state interests, and the plaintiff has failed to show that the Kansas state courts would not provide him with an adequate opportunity to articulate his constitutional claims there. *See Setser v. Pennsylvania,* No. 07-0398, 2007 WL 1412248 (M.D. Pa. May 10, 2007) (abstaining from injunction upon noting that plaintiff failed to establish that he could not raise his constitutional claim in state court).

In argument on the hearing of the motion for a restraining order, plaintiff offered two rationales for not seeking similar relief in state court. First, that K.S.A. 22-3001 mandates the convening of a grand jury when the petition is certified; the state district court does not have discretion to refuse to convene the grand jury. Second, plaintiff notes that state judges may be subject to electoral pressures.

Plaintiff's arguments fail to show that a state remedy would be inadequate. While the statute generally requires the convening of the grand jury, there is nothing in state law which would prohibit the plaintiff from advancing his various federal constitutional claims, either by intervening in the grand jury proceeding directly or (as he has attempted to do here) by presenting those claims in an independent civil action for injunctive relief. Plaintiff's second argument is belied by both the general, laudable history of the independent (even if elected) Kansas state judiciary, as well as his own specific experience with those courts, having previously and repeatedly vindicated his rights in the state courts. In any event, the argument is too general to be acceptable: granting relief from

9

abstention merely because a state court's judiciary is elected would cause *Younger*'s extremely limited exception to swallow the general rule.

IT IS ACCORDINGLY ORDERED this 11th day of October, 2007 that the plaintiff's Motion for Injunctive Relief (Dkt. No. 2) is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE